# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2026-0787

_____

HONORABLE JESSICA J. YEARY,
the Public Defender for the
Second Judicial Circuit,

    Petitioner,

    v.

CHIEF JUDGE OF THE SECOND
JUDICIAL CIRCUIT,

    Respondent.

_____

Petition for Writ of Certiorari—Original Proceeding.


July 1, 2026


NEFF, J.

The Public Defender for the Second Judicial Circuit petitions this court for a writ of certiorari to quash Administrative Order 2026-03 (AO), issued by the Chief Judge of the Second Judicial Circuit on February 18, 2026. Because we conclude that certiorari is not available to review an administrative order of this character, we dismiss the petition.

# I. Background

The Chief Judge issued the AO pursuant to his administrative authority under Rule 2.215 of the Florida Rules of General Practice and Judicial Administration. The AO establishes a registry of court-appointed expert witnesses, sets a rate schedule for their compensation, and draws a distinction between payment for written evaluations, for which the court accepts responsibility, and payment for testimony at hearings, which the AO assigns to the party subpoenaing or requesting the expert unless the presiding judge independently determines the testimony is necessary and orders the expert to appear. The Public Defender challenges the AO as contrary to section 916.115, Florida Statutes, and Florida Rule of Criminal Procedure 3.212, and as violating the separation of powers.

## II. Analysis

### A. Certiorari Does Not Lie to Review Administrative Orders of This Type

The threshold question is whether certiorari is the proper vehicle to challenge this AO. To answer it, we must recover the traditional purpose of the writ. Just as all things have their season, all extraordinary writs have their reason. That reason is found in history. After all, "The rational study of law is still to a large extent the study of history. History must be a part of the study, because without it we cannot know the precise scope of rules which it is our business to know." Oliver Wendell Holmes, *The Path of the Law*, 10 Harv. L. Rev. 457, 469 (1897). That is especially true here, because the extraordinary writs are among the oldest tools in the common law arsenal[1], adopted as Florida law in 1829.[2] Broadly,

---

[1] The writ of certiorari goes back to at least the twelfth century in England. Harold Weintraub, *English Origins of Judicial Review by Prerogative Writ: Certiorari and Mandamus*, 9 N.Y.L.F. 478, 478 (1963).

[2] The common law of England, as of July 4, 1776, was adopted as the law of Florida by the Governor and Legislative Council of the Florida Territory on November 6, 1829. That provision of law

extraordinary writs exist to enable the "complete exercise of [our] jurisdiction," Art. V, § 4(b)(3), Fla. Const., not to create jurisdiction where none is historically authorized. *See Equal Ground Educ. Fund, Inc. v. Sec'y, Fla. Dep't of State*, No. SC2026-0857, 2026 WL 1678540, at *1 (Fla. June 10, 2026). But each writ has its own specific mechanism for doing so. As then-Judge Tanenbaum observed in his concurrence in *Yeary v. Chief Judge of Second Judicial Circuit*, 354 So. 3d 581, 583 (Fla. 1st DCA 2022), common law certiorari is a writ of ancient origin with a very precise purpose. That precise purpose, as the historical record makes clear, is the review of proceedings of lower tribunals.

The name itself is a good starting place to find the proper usage of certiorari. The Latin word certiorari is the shortened version of the phrase *quibusdam certis de causis volumus certiorari*–which means "for certain reasons we wish to be informed of something." Paul Andrew Warchuk, *The Writ of Certiorari and Its Scope, 1600–1800: For the Orderly Administration of Justice* 5 (Ph.D. dissertation, Univ. of Cambridge, 2023). Historically, the phrase could take on various forms[3], but all phrasings of the writ requested information from a lower tribunal.

Informed of what you may ask? Our supreme court has answered this question directly. The court has stated:

---

is found today in section 2.01, Florida Statutes. *Florida Statutory Revisions* 3 (1941) (Florida State University College of Law Research Center Digital Collections), https://library.law.fsu.edu /Digital-Collections/FLStatute1941/1941statutoryrevisions.pdf.

[3] For example, "*Quia quibusdam certis de causis cerciorari volumus super recordo et processu loquele que fuit Thoma de Weyland*" is another example of the phrasing of the writ. This version means, "Because for some definite reasons we wish to be certified as to the record and process of the suit before Thomas of Weyland. . . ." George John Miller & Alto Adams, *Origins and Current Florida Status of the Extraordinary Writs*, 4 Fla. L. Rev. 421, 433 n.31 (1951).

The power of this court to review and quash, on the common-law writ of certiorari, the *proceedings* of an inferior tribunal, when it *proceeds in a cause* without jurisdiction, or when *its procedure* is illegal, or is unknown to the law, or is essentially irregular, is, we think, clear; but, while such power does exist, it must be remembered that its exercise is not a matter of right, but rests in the sound legal discretion of the court, and when the writ is granted it will not serve the purpose of a writ of error or appeal with a bill of exceptions. *Basnett v. City of Jacksonville*, 18 Fla. 523; *Edgerton v. Mayor, etc., Id.* 528. Whenever an appeal lies from the proceedings sought to be reviewed, the general rule is to deny the writ of certiorari. The doctrine is generally stated that the functions of the writ of certiorari at common law, when addressed to inferior tribunals, are only to bring up for review on the record questions of jurisdiction, power, and authority of such tribunals, and that the appellate court is confined to the questions whether the inferior court had jurisdiction, and acted within its limits.

*Jacksonville, T. & K.W. Ry. Co. v. Boy*, 16 So. 290, 291 (Fla. 1894) (emphasis added). This understanding of certiorari was widely shared in the late 19th century. As one contemporaneous commentator stated:

A certiorari is generally a writ issued by a supreme or superior to an inferior court, directing the return of records of a cause pending before the latter in a particular case. . . . It lies at any stage of the proceedings in the inferior court, and not only on the ground of an error in the judgment of the latter, but also to examine the proceedings in order to see if any irregularity has taken place or the jurisdiction has been exceeded.

Benjamin J. Shipman, *Handbook of Common-Law Pleading* 195 (2d ed. 1895). *See also Miller v. Jones*, 80 Ala. 89, 93 (1885) ("The functions of the writ of *certiorari,* at common law, extended to questions of the jurisdiction of the inferior tribunal, as well as to the regularity of the proceedings."); Nathan Newmark, *The Present Scope of Certiorari*, 49 Cent. L.J. 406, 406 (1899) ("The writ of

*certiorari* is widely understood to be a means of reviewing adjudications or like proceedings of an inferior court, or other tribunal or a board, which transcend the jurisdiction of such court, tribunal, or board.").

The historical background patently establishes that certiorari is a mechanism for reviewing the records of proceedings of lower tribunals. The Florida Supreme Court has consistently understood the writ in exactly this way, describing it as the "limited review of the proceedings of an inferior jurisdiction." *Haines City Cmty. Dev. v. Heggs*, 658 So. 2d 523, 525 (Fla. 1995) (citing *Basnet v. City of Jacksonville*, 18 Fla. 523, 527 (1882)). In essence, certiorari is a demand by a superior tribunal to be informed of the proceedings of an inferior tribunal—a tool for ensuring that those proceedings have not been conducted in an illegal or irregular manner. *Id.*; *see also First Nat'l Bank v. Gibbs*, 82 So. 618, 619 (Fla. 1919) (the writ issues "to cause the entire record of the inferior court to be brought up by certified copy for inspection," and a petition "should make it appear that an illegal proceeding appears by the face of the record complained of"); *Basnet*, 18 Fla. at 526–27. As one judge succinctly put it, "[a]t common law, the writ itself was simply the legal process by which this court took non-exclusive jurisdiction over the record for review in an ongoing proceeding." *Statewide Guardian Ad Litem Office v. J.B.*, 361 So. 3d 419, 424 n.* (Fla. 1st DCA 2023) (Tanenbaum, J., concurring).

A writ of certiorari thus presupposes a *proceeding*. The Florida Supreme Court has been unambiguous about what that means as well. A proceeding, in the certiorari context, is a judicial or quasi-judicial act, meaning one that resolves a present dispute between parties, applies law retrospectively to determined facts, or makes an interlocutory ruling in a pending case. *De Groot v. Sheffield*, 95 So. 2d 912, 915–16 (Fla. 1957) (the writ "is a discretionary writ bringing up for review by an appellate court the record of an inferior tribunal or agency in a judicial or quasi-judicial proceeding"). The critical distinction is between judicial action, which "determines the rules of law applicable, and the rights affected by them, in relation to past transactions," and legislative or administrative action, which "prescribes what the rule of requirement of administratively determined duty shall be with respect to transactions to be executed in the future." *W.*

5

*Flagler Amusement Co. v. State Racing Comm'n*, 165 So. 64, 65 (Fla. 1935); *see also Bd. of Cnty. Comm'rs of Brevard Cnty. v. Snyder*, 627 So. 2d 469, 474 (Fla. 1993) (drawing the same distinction). Importantly, not every act requiring judgment or discretion qualifies as judicial. *Sirmans v. Owen*, 100 So. 734, 735 (Fla. 1924). The writ lies only where the tribunal below was "exercising functions clearly judicial or quasi judicial," and nothing less will do. *Id.*

The AO at issue here has none of the characteristics of a judicial or quasi-judicial action. It does not adjudicate a dispute between parties. It does not resolve any question of fact or law as to any particular defendant.[4] It does not arise from a pending case. *See Jimenez v. Rateni*, 967 So. 2d 1075 (Fla. 2d DCA 2007) (certiorari jurisdiction existed where a challenge to the effects of an administrative order arose through an interlocutory order in a pending case involving a specific litigant facing immediate harm, not as a freestanding challenge to prospective circuit-wide policy). Rather, the AO prescribes who bears financial responsibility for court-appointed expert witness testimony in competency proceedings, assigning that cost to the party subpoenaing the expert unless the presiding judge independently determines the testimony is necessary and orders the expert to appear. That is quintessentially an administrative or quasi-legislative act, meaning the formulation of a general rule of policy, rather than a judicial one. *Snyder*, 627 So. 2d at 474; *W. Flagler Amusement Co.*,

---

[4] The absence of any identified defendant also renders the petition speculative and premature. *Wal-Mart Stores E., L.P. v. Endicott*, 81 So. 3d 486, 490 (Fla. 1st DCA 2011) ("Generally speaking, irreparable harm cannot be speculative, but must be real and ascertainable."); *Holden Cove, Inc. v. 4 Mac Holdings, Inc.*, 948 So. 2d 1041, 1042 (Fla. 5th DCA 2007) (irreparable harm cannot be premature or speculative). The Public Defender's reliance on *Department of Children & Families v. Campbell*, 295 So. 3d 868 (Fla. 5th DCA 2020), is misplaced. That case involved a pending proceeding and the imminent expenditure of funds if the Department assumed responsibility for an improperly committed person. *Id.* Here, the Public Defender has not identified a single pending proceeding in which funds are currently at risk.

165 So. at 65. Confirming as much, the Chief Judge issued the AO expressly pursuant to Rule 2.215, which tasks a chief judge with "direct[ing] the formation and implementation of policies and priorities for the operation of all courts and officers within the circuit." Fla. R. Gen. Prac. & Jud. Admin. 2.215(b)(2). That is an administrative function, not a judicial one.

Certiorari "is a remedy limited solely to judicial or quasi judicial determinations." *W. Flagler*, 165 So. at 65. Because the AO is neither, the writ will not lie to review it. *Sirmans*, 100 So. at 735 (the writ "will not lie to review administrative acts").

We recognize that even a quasi-legislative or administrative order can acquire a quasi-judicial character sufficient to support certiorari review if the order requires notice, hearing, and consideration of evidence as a condition precedent to its issuance. *W. Flagler*, 165 So. at 65–66. However, no such predicate exists here. The Chief Judge issued the AO pursuant to his general administrative authority under Rule 2.215. The AO in question is a unilateral policy directive which required no prior notice to affected parties, no adversarial hearing, and no evidentiary record. The AO thus lacks any procedural attribute that might otherwise bring it within the reach of certiorari.

## B. The 2025 Amendment to Rule 2.215(e)(2) Does Not Alter This Conclusion

The Public Defender argues that the Florida Supreme Court's 2025 amendment to Rule 2.215(e)(2)—which provides that a "challenge to an administrative order on the ground that it is inconsistent with a constitution, court rules, local court rules, or with administrative orders entered by the chief justice of the supreme court must be made either by a petition for an extraordinary writ or an objection before the trial court in a pending case"—affirmatively authorizes this court to review the AO by certiorari. We disagree.

The 2025 amendment to Rule 2.215(e)(2) identifies permissible procedural vehicles for raising a challenge to an administrative order. It does not purport to expand or redefine the subject matter jurisdiction of the district courts of appeal, which is

fixed by the Florida Constitution and by longstanding decisional law defining the scope of the extraordinary writs. *See* Art. V, § 4(b)(3), Fla. Const. The rule cannot, by its own force, transform an administrative act into a judicial or quasi-judicial proceeding amenable to certiorari review. This is so because even our supreme court's rule-making authority "is limited to rules governing procedural matters and does not extend to substantive rights," *Boyd v. Becker*, 627 So. 2d 481, 484 (Fla. 1993), and subject matter jurisdiction is a constitutional grant of authority under Article V of the Florida Constitution, not a procedural matter. *See Oceania Joint Venture v. Ocean View of Miami, Ltd.*, 707 So. 2d 917, 920 (Fla. 3d DCA 1998). Undoubtedly, our supreme court did not intend, *sub silentio*, to change the constitutional limitations on jurisdiction by amending a rule of general practice and judicial administration. *See Puryear v. State*, 810 So. 2d 901, 905 (Fla. 2002) (the Court "does not intentionally overrule itself sub silentio").

To the extent the rule contemplates a "petition for an extraordinary writ," such a writ must still satisfy the constitutional and common-law requirements attendant to whatever writ is invoked. Certiorari, for its part, requires a judicial or quasi-judicial proceeding below. There is none here.

The reference in *1-888-Traffic Schs. v. Chief Cir. Judge, Fourth Jud. Cir.*, 734 So. 2d 413, 415 (Fla. 1999), to "common law certiorari" as a "long-standing mechanism for challenging routine administrative orders" in the district courts does not compel a different result. That passing observation was dictum, which lacks binding authority. *Johnson v. State*, 397 So. 3d 626, 641 n.9 (Fla. 2024) (citing *State ex rel. Biscayne Kennel Club v. Bd. of Bus. Regul. of Dep't of Bus. Regul. of State*, 276 So. 2d 823, 826 (Fla. 1973)); *Churchill v. DBI Servs., LLC*, 361 So. 3d 896, 904 (Fla. 1st DCA 2023) ("We are not bound by dicta, only holdings."). The supreme court's actual holding in *1-888-Traffic Schools* was to limit the reach of its decision in *Wild v. Dozier*, 672 So. 2d 16 (Fla. 1996) and to state, as a general matter, that the district courts of appeal have jurisdiction to review administrative orders of chief judges of the circuit courts. *1-888-Traffic Schools*, 734 So. 2d at 417. Notably, however, the *1-888-Traffic Schools* court drew no distinction between administrative orders that arise from or affect

8

pending judicial proceedings and those that, like the AO here, are purely prospective policy directives untethered to any proceeding. That distinction is not merely academic. It is the foundational requirement of the writ itself, rooted in centuries of common law and confirmed by longstanding Florida Supreme Court precedent. The writ lies only where there is a judicial or quasi-judicial proceeding below to review. Because the *1-888-Traffic Schools* court provided no analysis of this threshold requirement, its passing reference to certiorari as a mechanism for challenging administrative orders cannot be read as a considered rejection of that requirement. Unanalyzed dictum cannot displace the court's express, longstanding holdings on the scope and nature of the writ. *See Pell v. State*, 122 So. 110, 112 (Fla. 1929) ("[I]t was not essential to the decision in that case, and hence mere obiter dictum and without force as a precedent."); *Puryear*, 810 So. 2d at 905. Nor may a court expand the obvious jurisdictional limitations found in Article V of the Florida Constitution through an extraordinary writ, since such writs may only be used to complete our jurisdiction, not expand it. *See* Art. V, § 4(b)(3), Fla. Const. As we do not believe our supreme court meant to improperly expand the jurisdiction of the district courts of appeal, we do not read *1-888-Traffic Schools* in such a manner.

## C. No Other Writ Provides a Basis for Relief in This Court

Having concluded that certiorari will not lie and that the 2025 amendment to Rule 2.215(e)(2) does not supply an independent basis for jurisdiction, we need not survey each available extraordinary writ in turn. A single constitutional limitation forecloses them all. Supervision of chief judges in their administrative capacity is reposed in the chief justice of the Florida Supreme Court, not in the district courts of appeal. *See* Art. V, § 2(d), Fla. Const. ("The chief judge shall be responsible for the administrative supervision of the circuit courts and county courts in his circuit."); *Wild v. Dozier*, 672 So. 2d 16, 18 (Fla. 1996) ("[T]here is nothing in our Constitution to indicate that district courts are to share in the administrative supervision of our trial courts."); Fla. R. Gen. Prac. & Jud. Admin. 2.215(b)(2) ("The chief judge is responsible to the chief justice of the supreme court."). No extraordinary writ available to this court will reach the AO in the manner it is presented to us.

9

### D. The Public Defender Is Not Without a Remedy

As noted in Judge Tanenbaum's concurrence in *Yeary*, dismissal of this petition does not leave the Public Defender without recourse. 354 So. 3d at 585. If the challenge is to the Chief Judge's authority to issue the AO at all, the Public Defender may petition the Florida Supreme Court directly. *See* Art. V, § 3(b)(8), Fla. Const. (authorizing the Supreme Court to "issue writs of mandamus and quo warranto to state officers and state agencies"); Fla. R. Gen. Prac. & Jud. Admin. 2.215(b)(2) ("The chief judge is responsible to the chief justice of the supreme court."). Alternatively, should the AO be applied in a specific pending criminal case in a manner that implicates a defendant's rights, the proper challenge lies in that proceeding, with appropriate appellate review to follow. *See Jimenez*, 967 So. 2d at 1077 (certiorari available where interlocutory order was issued in a pending case involving a specific litigant facing immediate harm due to the ramifications of an administrative order).

We express no view on the merits of the Public Defender's substantive arguments regarding section 916.115, Florida Statutes; Fla. R. Crim. P. 3.212; or the separation of powers. Those questions are properly presented to a tribunal with jurisdiction to resolve them.

### III. Conclusion

So that our holding is explicitly understood, we end by explaining why this case differs from the many other cases in which an administrative order of a chief judge is properly challenged. *See, e.g.*, *Jimenez, supra*; *Gincley v. State*, 267 So. 3d 444 (Fla. 4th DCA 2019) (criminal defendant sought certiorari relief from the consequences of an administrative order after being denied entry into the circuit's treatment-based drug court program). In cases like these exemplars, the challenge generally arises from a pending proceeding involving a specific litigant facing immediate harm. Here, by contrast, the Public Defender sought relief on her own behalf, not on behalf of any identified client in a pending proceeding, and challenged the AO in the abstract, untethered from its impact on any particular defendant

10

in any ongoing case.[5] Because there is no proceeding of a lower tribunal to review and no judicial or quasi-judicial act to examine, certiorari does not lie. The historical understanding of the writ, as confirmed by longstanding and direct holdings of the Florida Supreme Court, requires this result. Accordingly, the petition is DISMISSED for lack of jurisdiction. CONFLICT is CERTIFIED with *Holt v. Chief Judge of Thirteenth Judicial Circuit*, 920 So. 2d 814 (Fla. 2d DCA 2006), which asserted certiorari jurisdiction over a freestanding challenge by a public defender to a chief judge's administrative order without requiring the challenge to arise from a pending proceeding involving a judicial or quasi-judicial act.

RAY, J., concurs; WINOKUR, J., concurs with opinion.

––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––

––––––––––––––––––––

[5] Our conclusion finds further support in this court's prior decision in *State, Department of Juvenile Justice v. Soud*, 685 So. 2d 1376 (Fla. 1st DCA 1997), which is not to the contrary. There, certiorari jurisdiction existed for three reasons absent here: the respondent was not the chief judge and therefore lacked any authority to issue an administrative order, *id.* at 1378; the order arose from and was directed at cases pending before the issuing judge rather than prescribing prospective circuit-wide policy, *id.* at 1377; and the petitioner was a state agency directly subject to the order's directives in those pending proceedings. *Id.* at 1378. None of those predicates exists here. The Chief Judge unquestionably possessed authority to issue administrative orders under Rule 2.215, the AO is a prospective policy directive unconnected to any pending proceeding, and the Public Defender challenges it in the abstract on her own behalf rather than as a party to an ongoing case.

WINOKUR, J., concurring.

While I join the majority opinion, I wish to make two additional points regarding the 2025 amendment to Florida Rule of General Practice and Judicial Administration 2.215(e)(2).

First, while the amended rule states that a challenge to an administrative order (AO) must be made "by a petition for an extraordinary writ[,]"[1] this provision cannot be read to create a substantive right that did not exist before. "[W]hen a rule of procedure attempts to create a substantive right, it violates the Legislature's authority under article III of the Florida Constitution to enact substantive law." *Hines v. State*, 931 So. 2d 148, 150 (Fla. 1st DCA 2006). Because the Supreme Court cannot create a right of action by rule of procedure, I conclude that it had no intention of doing so. Accordingly, Yeary had the same right to file a petition for an extraordinary writ to challenge the AO before and after the Supreme Court adopted the amendment to rule 2.215(e)(2).

However, as the majority opinion amply discusses, certiorari is not an appropriate "extraordinary writ" to challenge the AO, a conclusion that the amended rule does not, and cannot, alter. Other writs might be appropriate, but it is "not . . . the responsibility of [this] court to seek the proper remedy" for Yeary— particularly a civil remedy when she has sought a review remedy. Fla. R. App. P. 9.040(c); *compare* Fla. R. Civ. P. 1.630(a) (listing several types of writs that are governed by the Florida Rules of Civil Procedure); *with In re Amends. to Fla. Rules of Civ. Proc.*, 131 So. 3d 643, 652 (Fla. 2013) (removing reference to certiorari in rule 1.630 because it is "governed by the Florida Rules of Appellate Procedure").

Second, to the extent that Yeary has the right to challenge an AO submitted by the chief judge of a circuit court, I question whether this court ever provides the correct forum for it. A chief judge "is responsible to the chief justice of the supreme court." Fla.

---

[1] The rule permits challenge by another procedure—objection before the trial court in a pending case in which the administrative order applies—that does not apply here.

R. Gen. Prac. & Jud. Admin. 2.215(b)(2). Again, the order at issue is not an action taken in a particular case where this court would eventually have appellate jurisdiction; it is action taken by the chief judge in his capacity as "the administrative officer of the courts within the circuit[.]" *Id.* If the chief judge has exceeded his authority by issuing an administrative order that violates legal requirements, then the Supreme Court's own rules indicate that the chief justice has authority to address it. *See* Fla. R. Gen. Prac. & Jud. Admin. 2.205(a)(2)(B) ("The chief justice shall be the administrative officer of the judicial branch . . . and shall be responsible for the dispatch of the business of the branch"); *see also* Art. V, § 2(b) ("The chief justice of the supreme court . . . shall be the chief administrative officer of the judicial system").

This conclusion is consistent with then-Judge Tanenbaum's observation in the earlier case of *Yeary v. Chief Judge of Second Jud. Cir.*, where he noted that "[if Yeary] views the chief judge as having exceeded his authority in issuing the administrative order at all, she may petition the supreme court directly. *See* Art. V, § 3(b)(8), Fla. Const. (giving the supreme court the authority to 'issue writs of mandamus and quo warranto to state officers and state agencies')." 354 So. 3d 581, 585 (Fla. 1st DCA 2022) (Tanenbaum, J., concurring in result).[2] If any court should determine whether a chief judge has exceeded his authority in discharging his administrative duties, it is the Supreme Court. To the extent that one may challenge an AO "by a petition for an extraordinary writ[,]" that challenge should be made in the Supreme Court. Fla. R. Gen. Prac. & Jud. Admin. 2.215(b)(2). But as we should not choose Yeary's remedy for her, we should not choose the appropriate forum for her either. *See generally* Fla. R. App. P. 9.040(b)(1).

---

[2] I note, in this regard, that the Court in *1-888-Traffic Schs. v. Chief Cir. Judge, Fourth Jud. Cir.*, addressed only its own authority to hear the petition under Article V, section 3(b)(7) of the Florida Constitution, and not under its authority to issue writs of mandamus or quo warranto under section 3(b)(8). 734 So. 2d 413, 417 (Fla. 1999).

_____

Jessica J. Yeary, Public Defender, Tallahassee, for Petitioner.